**716**

Reed **JOHNSTON**, Regional Director of the Eleventh Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION NO. 71,** Respondent.

Civ. No. 1858.

United States District Court
W. D. North Carolina,
Asheville Division.

Aug. 5, 1959.

Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., James R. Webster, Chief Law Officer, N. L. R. B., Winston-Salem, N. C., Julius G. Serot, Sanfjord B. Teu, II, Washington, D. C., Henry L. Segal, Baltimore, Md., for petitioner.

Robert S. Cahoon, Greensboro, N. C., for respondent.

WARLICK, District Judge.

This cause came on to be heard upon the verified petition of Reed Johnston, Regional Director of the Eleventh Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended 29 U.S.C.A. § 160 (*l*) (herein called the Act), pending the final disposition of the matters involved pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition.

A hearing on the issues raised by the petition and answer made thereto was duly held in Asheville, North Carolina, on August 4, 1959. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court fully considered the petition, answer, evidence and arguments and

briefs of counsel, and upon the entire record, makes the following:

### Findings of Fact

1. Petitioner is Regional Director of the Eleventh Region of the Board, an agency of the United States, and filed this petition for and on behalf of the Board.

2. Respondent International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 71 (herein called Local 71), was and is a labor organization within the meaning of Sections 2(5) and 8(b) of the Act, 29 U.S.C.A. §§ 152(5), 158 (b), and is engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members and employee members of affiliated labor organizations.

3. On or about July 15, 1959, the New Dixie Lines, Inc., (herein called New Dixie), pursuant to the provisions of the Act, filed with the Board an amended charge to a charge filed with the Board on June 20, 1959, alleging that respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (A) of the Act.

4. Said charges were referred to petitioner as Regional Director of the Eleventh Region of the Board for investigation and were investigated by petitioner and under his supervision.

5. There is, and petitioner has, reasonable cause to believe that:

(a) New Dixie and Jocie Motor Lines, Inc. (herein called Jocie), commonly owned and controlled corporations, are engaged in business as common carriers of freight by motor vehicles. They maintain offices at Richmond, Virginia, and maintain and operate terminals and other facilities in various cities, including Charleston, South Carolina, and Charlotte, North Carolina, and interline freight in these various cities with other interstate common carriers of freight. During the past year, New Dixie and Jocie each had gross revenue in excess of $50,000, derived from direct interstate transportation of freight.

(b) Since on or about June 18, 1959, respondent has been engaged in a labor dispute with New Dixie and Jocie.

(c) Since on or about June 18, 1959, in furtherance of the said dispute set forth in Finding of Fact 5(b) above, respondent has been on strike against New Dixie and Jocie and has been picketing New Dixie's and Jocie's premises in Charlotte, North Carolina, where New Dixie's and Jocie's warehouse employees are regularly employed throughout the working day and to which New Dixie's and Jocie's over-the-road and city pick-up drivers report daily.

(d) In addition, in furtherance of the said dispute, respondent, since on or about June 18, 1959, has picketed at the premises and terminals of customers and carriers doing business with New Dixie and/or Jocie in Charlotte, North Carolina, including Lowe's Hardware Company, Carolina-Norfolk Lines, Inc., Metal Service Company, General Electric Company, Patent Scaffolding Company (herein respectively called Lowe's, Carolina, Metal, General Electric and Patent), when a truck of New Dixie and/or Jocie made or attempted to make a delivery to or pick-up from such premises or terminals.

(e) In further support of the said labor dispute, since on or about June 18, 1959, respondent has orally requested and appealed to employees of Lowe's Carolina, Metal, General Electric, Patent, and of other employers, doing business with New Dixie and/or Jocie, to refuse to accept, handle or work on motor freight supplied or delivered by, or to be supplied or delivered to New Dixie and/or Jocie.

(f) By the picketing, requests and appeals set forth in Findings of Fact 5(d) and (e) above, and by other means, respondent has engaged in, and has induced and encouraged employees of Lowe's, Carolina, Metal, General Electric, Patent, and of other employers, to engage in, strikes or concerted refusals in the course of their employment to use, manufacture, process, transport or otherwise handle or work on goods, articles, ma-

terials, or commodities, or to perform services.

(g) An object of respondent's acts and conduct set forth in Findings of Fact 5(d), (e) and (f) above, has been and is to force or require Lowe's, Carolina, Metal, General Electric, Patent, and other employers or persons, to cease using, selling, handling, transporting, or otherwise dealing in products transported or delivered by or to be transported or delivered by New Dixie, and/or Jocie, and to cease doing business with New Dixie and Jocie.

6. Respondent's acts and conduct set forth in the Findings of Fact 5(d), (e), (f) and (g) above, occurring in connection with the operations of New Dixie and Jocie, have a close, intimate and substantial relation to trade, traffic and commerce among the several states and tend to lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

7. It may be fairly anticipated that unless restrained, respondent will repeat and continue the acts and conduct as set forth in Findings of Fact 5(d), (e), (f) and (g) above, or similar or like acts and conduct.

### Conclusions of Law

1. This Court has jurisdiction over the parties and of the subject matter of this proceeding and is empowered to grant injunctive relief under Section 10 (*l*) of the Act.

2. Respondent, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 71 is a labor organization within the meaning of the Act.

3. There is, and petitioner has, reasonable cause to believe that:

(a) New Dixie and Jocie are each engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

(b) Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (A) of the Act, and affecting commerce within the meaning of Section 2(6) and (7) of the Act, and that a continuation of such practices will impair the policies of the Act as set forth in Section 1 thereof.

4. To preserve the issues for the orderly determination by the Board as provided in the Act, it is appropriate, just and proper, that, pending the final disposition of the matters involved herein pending before the Board, respondent, its officers, agents, representatives, servants, employees, attorneys, and all members or persons acting in concert or participation with it, be enjoined and restrained from the commission of the acts and conduct set forth in Findings of Fact 5(d), (e), (f), and (g), above, acts in furtherance or support thereof, and like or related acts or conduct, the commission of which in the future may be fairly anticipated from respondent's acts and conduct in the past.